IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20–CV–85–BR

| | |
|---|---|
| JEANNIE MAE BARDEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | ORDER |
| ) | |
| MURPHY-BROWN, LLC and ) | |
| SMITHFIELD FOODS, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' (1) motion to dismiss, (DE # 28), and (2) motion to strike, (DE # 30).

## I. BACKGROUND

In May 2020, plaintiffs initiated this action against Murphy-Brown, LLC ("Murphy-Brown") and Smithfield Foods, Inc. ("Smithfield"). According to plaintiffs, Murphy-Brown owns over 20,000 swine located at Vestal Farms in Magnolia, North Carolina. (Am. Compl., DE # 18, ¶¶ 2, 4, 6.) The swine have allegedly caused odor, dust, feces, urine, and flies, among other things, to infiltrate plaintiffs' neighboring properties. (See, e.g., id. ¶¶ 5, 10, 38-40.) Transportation of the swine (dead and alive) and their feed in large trucks on streets outside plaintiffs' homes causes noise, dust, liquid, and dead animal parts to enter plaintiffs' properties. (Id. ¶ 12.) Dead swine, placed in boxes, attract buzzards, flies, and vermin, which drop swine body parts on plaintiffs' properties. (Id. ¶ 13.) Plaintiffs allege that Murphy-Brown has caused its swine to create the injurious conditions and that defendants exercise control over the management of the swine and operation of Vestal Farms. (Id. ¶¶ 6, 261, 304, 315, 316, 325,

326.)  Plaintiffs allege claims for trespass, negligence, civil conspiracy, and unjust enrichment.[1]  (Id. at 45-54.)  They seek compensatory and punitive damages.[2]  (Id. at 55.)

Defendants contend the court should dismiss plaintiffs' amended complaint for failure to join an indispensable party and for failure to state any claim for relief.  Also, defendants request that the court strike from the amended complaint certain allegations they deem objectionable.  Plaintiffs oppose dismissal and the removal of any allegations from the amended complaint.

## II.  DISCUSSION

### A.    Motion to Dismiss

#### 1.    *Failure to join an indispensable party*

First, defendants argue that plaintiffs' amended complaint should be dismissed for their failure to join Circle K II, Inc. ("Circle K") pursuant to Federal Rule of Civil Procedure 12(b)(7).  (Mem., DE # 29, at 2-9.)  That rule permits a party to assert the defense of failure to join a party under Rule 19 by way of motion.  See Fed. R. Civ. P. 12(b)(7).

> Rule 19 sets up "a two-step inquiry." We ask "first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)."
> Pursuant to Rule 19(a), a party is necessary if
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of an action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> A necessary party should be ordered into the action. But "[w]hen a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed."

---

[1] Plaintiffs voluntarily dismissed their claim under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.  (Not., DE # 36.)
[2] Plaintiffs no longer seek injunctive or equitable relief.  (Not., DE # 36.)

2

Rule 19(b) provides guidance on the identification of an indispensable party: "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." In this regard, we are given the following nonexclusive factors to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

"Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result."

Neither prong of Rule 19 is to be applied merely as a "procedural formula." To the contrary, the "[d]ecisions must be made pragmatically, in the context of the substance of each case, and courts must take into account the possible prejudice to all parties, including those not before it."

McKiver v. Murphy-Brown, LLC, 980 F.3d 937, 950-51 (4th Cir. 2020) (citations omitted).

Defendants contend Circle K is a necessary party because "Circle K[] has a direct pecuniary interest in the litigation, and as the party whose conduct is targeted, it has the right to defend itself not just as a witness, but as a party, to avoid any prejudicial ruling." (Mem., DE # 29, at 7 (citation omitted)). According to Circle K, as the operator of Vestal Farms and pursuant to an agreement with Murphy-Brown, it has raised swine at the farm since 2016. (Kilpatrick Decl., DE # 29-1, ¶¶ 3-4, 6.)[3] It is concerned that unless it participates directly in this litigation, it cannot protect its use of the farm, its farming practices, and its financial investment in the farm.[4] (Id. ¶ 8.)

---

[3] On a Rule 12(b)(7) motion, unlike on a Rule 12(b)(6) motion, the court may consider matters outside the operable pleading without converting the motion to one for summary judgment. See Carolina Custom Yachts, Inc. v. Branch Bank and Tr. Co., No. 2:08-CV-990-PMD, 2009 WL 10678185, at *4 (D.S.C. Jan. 5, 2009).

[4] Although "Circle K[] seeks to join this lawsuit to protect its interests and to dispute vigorously Plaintiffs' allegations," (Kilpatrick Decl., DE # 29-1, ¶ 9), it has not filed a motion to intervene.

3

Circle K's pecuniary interest in this action is not direct.  Plaintiffs do not seek to modify the operations of Vestal Farms, and the validity of Circle K's agreement with Murphy-Brown is not at issue here.  Rather, plaintiffs seek to hold defendants monetarily responsible for their actions regarding the swine at Vestal Farms.  While Circle K's conduct will likely be relevant, the outcome of this litigation does not "turn on" its conduct.  Cf. Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Rite Aid of S.C., Inc., 210 F.3d 246, 251 (4th Cir. 2000) (affirming the district court's dismissal of a declaratory judgment action between a subsidiary and its insurer for failure to join the subsidiary's parent company where the result of the suit turned on the parent company's conduct in notifying the insurer of the underlying action and the district court would be required to interpret the notice provisions of the policy between the parent company and the insurer).  Any impact an adverse judgment against defendants might have on Circle K's interests related to Vestal Farms is speculative and not sufficient for the court to conclude that proceeding without Circle K as a party will impair or impede its ability to protect its interests at Vestal Farms.  See McKiver, 980 F.3d at 952 ("Even if an absent party is alleged to have played a central role in the action at issue, and even if resolution of the action will require the court to evaluate the absent party's conduct, that party in many cases will not have interests that warrant protection under Rule 19(a)(1)(B)(i).  The interest in question should be more than a financial stake, and more than speculation about a future event."  (cleaned up and citation omitted)).  Therefore, Circle K is not a necessary party under Rule 19(a), and the court will not dismiss this action for plaintiffs' failure to join it as a party.

    2.    *Failure to state a claim*

Next, defendants argue the amended complaint should be dismissed because plaintiffs have failed to state any claim for relief pursuant to Rule 12(b)(6).

4

> To survive a 12(b)(6) motion, a complaint must contain enough facts "'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" "[A]lthough a court must accept as true all factual allegations contained in a complaint, such deference is not accorded legal conclusions stated therein," and "[t]he mere recital of elements of a cause of action, supported only by conclusory statements is not sufficient."

Md. Shall Issue, Inc. v. Hogan, 963 F.3d 356, 361 (4th Cir. 2020) (citations omitted), pet. for cert. filed, No. 20-855 (U.S. Dec. 29, 2020).

### i. Right to Farm Act

Defendants initially contend North Carolina's Right to Farm Act ("RTFA"), N.C. Gen. Stat. § 106-700, *et seq.*, bars *all* of plaintiffs' claims.[5] (Mem., DE # 29, at 9-14.) The Act's purpose is "to reduce the loss to the State of its agricultural and forestry resources by limiting the circumstances under which an agricultural or forestry operation may be deemed to be a nuisance." N.C. Gen. Stat. § 106-700. In furtherance of that purpose, it places certain requirements on a plaintiff to successfully assert a nuisance claim against agricultural and forestry operations. Relevant here is the requirement that the action be filed within one year of the establishment of the subject operation. Id. § 106-701(a)(3). Notably, the RFTA's requirements "do[] not apply to any cause of action brought against an agricultural or forestry operation for negligence, trespass, personal injury, strict liability, or other cause of action for tort liability other than nuisance . . . ." Id. § 106-702(d).

Defendants argue that plaintiffs' claims "are merely disguised nuisance claims," (Mem., DE # 29, at 9), and should be dismissed because "[p]laintiffs admit operating hog farms have existed at Vestal Farms . . . for decades," (id. at 11 (citation omitted).) Plaintiffs urge the court

---

[5] Although defendants urge the court to dismiss all claims on the basis, the only claims they mention by name are plaintiffs' trespass and negligence claims, (see Mem., DE # 29, at 9, 11, 12), and thus, they do not seriously contend the RFTA bars plaintiffs' other claims (civil conspiracy and unjust enrichment).

5

to accept plaintiffs' claims for what they are—non-nuisance-based claims—such that the RTFA does not preclude them. (See Resp., DE # 38, at 7-8.)

"A complaint 'must be judged by its substance rather than according to its form or label . . . .' As courts have recognized, the plaintiff's designation of the counts in a complaint does not control the interpretation of those counts." Edwards v. Bank of N.Y. Mellon, No. 2:14CV304, 2014 WL 5594876, at *8 (E.D. Va. Oct. 31, 2014) (citations omitted). Courts do not hesitate to recharacterize a party's denominated claim to align it with its substance, such as when a party is proceeding *pro se* or where federal law preempts a state law claim. See, e.g., Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 195 (4th Cir. 2002) (treating a state claim for breach of contract as a federal claim under ERISA); Want v. Schurz Commc'ns, No. CV CCB-19-1201, 2019 WL 2078658, at *3 (D. Md. May 10, 2019) (recognizing "[t]he label applied to a cause of action does not change the characteristics of the cause of action and convert it into a federal claim" and characterizing the *pro se* plaintiff's claims as state causes of action over which it lacked jurisdiction).

Defendants emphasize that plaintiffs' allegations in their amended complaint mirror those allegations underlying nuisance claims asserted in related litigation, (Mem., DE # 29, at 10 (citing In re NC Swine Nuisance Litigation, No. 5:15-CV-13-BR (E.D.N.C.))), and, under North Carolina law, they should be characterized as a nuisance claim, (see id. at 11-12). Plaintiffs do not deny that in many respects their allegations are strikingly similar to those in the related litigation where the plaintiffs brought nuisance claims against Murphy-Brown.[6] Just because those plaintiffs chose to proceed only with a nuisance claim does not mean plaintiffs here must likewise limit their claims or that the court should analyze the claims here as one for nuisance

---

[6] A different version of the RFTA was at issue in that case.

6

and only nuisance. Under North Carolina law, it is not uncommon for conditions to constitute a nuisance and a trespass as well as other causes of liability. See, e.g., BSK Enters., Inc. v. Beroth Oil Co., 783 S.E.2d 236, 249, 252-53 (N.C. Ct. App. 2016) (claims for nuisance, trespass, and violation of North Carolina's Oil Pollution and Hazardous Substances Control Act based on the migration of oil onto the plaintiff's property and contamination of its groundwater); Shadow Group, LLC v. Heather Hills Home Owners Ass'n, 579 S.E.2d 285, 287-88 (N.C. Ct. App. 2003) (trespass and nuisance claims based on the flow of water from subdivision's common areas onto the plaintiff's property); Whiteside Estates, Inc. v. Highlands Cove, LLC, 553 S.E.2d 431, 436-40 (N.C. Ct. App. 2001) (claims for nuisance, trespass, and violation of North Carolina's Sedimentation Pollution Control Act based on construction causing colloidal material to enter the plaintiff's creek and lake). The court will not restrict plaintiffs' allegations to a nuisance cause of action.

Also, defendants point to decisions from other states' courts construing their right to farm acts. In those cases, the courts concluded trespass claims fell within the right to farm acts' protection against nuisance liability. See Himsel v. Himsel, 122 N.E.3d 935, 945 (Ind. Ct. App. 2019) (holding the trial court properly concluded the Indiana right to farm act barred the plaintiffs' trespass claim which alleged noxious emissions from a hog farm entered into their homes); Ehler v. LVDVD, L.C., 319 S.W.3d 817, 823-24 (Tex. Ct. App. 2010) (concluding that "nuisance action" as used in the Texas right to farm act includes a trespass action and furthers the purpose of the statute); Rancho Viejo LLC v. Tres Amigos Viejos LLC, 123 Cal. Rptr. 2d 479, 487 (Cal. Ct. App. 2002) ("We concede that, read literally, the [California right to farm] statute immunizes specified agricultural enterprises only as against claims based upon a theory of public or private nuisance and not against claims based on other liability theories, such as

7

trespass. But we cannot accept appellant's position that the Legislature intended by this reference to focus strictly upon the pleaded theory of liability and reject immunity for an accepted and established farming activity amounting to a nuisance, simply because it is pleaded as a trespass."). However, a significant distinction exists between the right to farm acts at issue in those cases and the RFTA. Unlike the statutes in those other states, the RFTA expressly excludes from its reach negligence, trespass, and other non-nuisance tort claims. Compare Cal. Civ. Code § 3482.5 (West 2021); Ind. Code Ann. § 32-30-6-9 (West 2020); Tex. Agric. Code Ann. § 251.001, *et seq.* (West 2019), with N.C. Gen. Stat. § 106-702(d). Based on this plain language, the RFTA does not apply to plaintiffs' non-nuisance claims. Accordingly, the court considers whether plaintiffs have adequately alleged those claims.

### ii. Trespass

Plaintiffs first claim defendants committed trespass to their properties. Defendants argue that plaintiffs have failed to state a claim for either intentional trespass or unintentional trespass. (Mem., DE # 29, at 15-17.) Citing to their "allegations of negligence," plaintiffs contend that they have sufficiently alleged a trespass claim. (Resp., DE # 38, at 10.)

> "In order to establish a trespass to real property, a plaintiff must show: (1) his possession of the property at the time the trespass was committed; (2) an unauthorized entry by the defendant; and (3) resulting damage to the plaintiff." . . .
>> Except where the actor is engaged in an abnormally dangerous activity, an unintentional and non-negligent entry on land in possession of another, or causing a thing or third person to enter the land, does not subject the actor to liability to the possessor, even though the entry causes harm to the possessor or to a thing or third person in whose security the possessor has a legally protected interest.

Wagner v. City of Charlotte, 840 S.E.2d 799, 809 (N.C. Ct. App.) (citation and alteration omitted) (quoting Smith v. VonCannon, 197 S.E.2d 52 (N.C. 1973)), appeal dismissed, review denied, 846 S.E.2d 277 (N.C. 2020).

Among other things, plaintiffs allege they were in lawful possession of their properties, (Am. Compl., DE # 18, ¶ 303); defendants owned and controlled hogs near plaintiffs' properties, (id. ¶ 304); through their improper or negligent operation of the facility, defendants caused dust, urine, and fecal matter to enter plaintiffs' properties, (id. ¶¶ 306, 310); plaintiffs did not consent to the contaminants entering their properties, (id. ¶ 307); and the invasions have caused impairment of plaintiffs' use and enjoyment of their properties, harm to their physical and mental health, and a decrease in their property values, (id. ¶¶ 39-40, 42, 308, 321). With these allegations, plaintiffs have stated, at a minimum, a claim for unintentional trespass.

### iii. Negligence

Plaintiffs' second claim is for negligence. According to defendants, this claim fails as a matter of law because plaintiffs have not alleged the existence of a duty or that defendants caused their injuries. (Mem., DE # 29, at 18-19.) In response, plaintiffs emphasize that they allege not only that defendants, as principals, exercise control over Vestal Farms, as their agent, but also that defendants were directly involved in the operation of Vestal Farms. (Resp., DE # 38, at 12.) As a result of defendants' negligent conduct, plaintiffs claim they suffered a loss of enjoyment of use of their properties. (Id. at 13.)

> To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach. The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence. The duty of ordinary care is no more than a duty to act reasonably. The duty does not require perfect prescience, but instead extends only to causes of injury that were reasonably foreseeable and avoidable through the exercise of due care. Thus, it is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected. Usually the question of foreseeability is one for the jury.
> Whether the harm was foreseeable depends on the particular facts.

9

Fussell v. N.C. Farm Bureau Mut. Ins. Co., 695 S.E.2d 437, 440 (N.C. 2010) (internal quotation marks, citations, and alteration omitted).

Plaintiffs do not allege defendants own Vestal Farms. Nonetheless, they allege defendants have a duty based their "direct involvement in the material aspects of the operation of the facilities and the management of the hogs." (Am. Compl., DE # 18, ¶ 326.) It is reasonably foreseeable that if defendants did not act reasonably in such operation and management—particularly with regard to waste management—dust, urine, and fecal matter might travel to neighboring properties. Under these alleged circumstances, plaintiffs have adequately alleged defendants owed them a duty. Likewise, plaintiffs have sufficiently alleged proximate cause. See Williamson v. Liptzin, 539 S.E.2d 313, 319 (N.C. Ct. App. 2000) ("The element of foreseeability is a requisite of proximate cause." (citing Hairston v. Alexander Tank & Equip. Co., 311 S.E.2d 559, 565 (1984)). Therefore, plaintiffs have stated a claim for negligence.

### iv. Civil Conspiracy

Plaintiffs allege defendants engaged in a civil conspiracy. Under North Carolina law, "a complaint sufficiently state[s] a claim for civil conspiracy when it allege[s] (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 666 S.E.2d 107, 115 (N.C. 2008) (citation omitted)).

Specifically, plaintiffs claim defendants conspired with each other to commit trespass and to mislead the public about the science of hog manure removal as well as to deprive plaintiffs of certain rights under the United States and North Carolina Constitutions, (Am. Compl., DE # 18, ¶¶ 332, 342), namely, "their property, the enjoyment of the fruits of their own labor, and the

pursuit of happiness without due process of law," (id. ¶ 342).[7] Defendants contend this claim cannot survive because plaintiffs allege Murphy-Brown's sole member is a division of Smithfield, and as such, defendants cannot conspire with each other. (Mem., DE # 29, at 21 (citing Am. Compl., DE # 18, ¶ 33).)

Under the intracorporate immunity doctrine, "because at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself."[8] Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, 805 S.E.2d 147, 156 (N.C. Ct. App. 2017) (internal quotation marks and citation omitted). This doctrine has been applied to preclude a civil conspiracy claim not only where a corporation allegedly conspired with its employees and agents, see, e.g., Seguro-Suarez ex rel. Connette v. Key Risk Ins. Co., 819 S.E.2d 741, 754-55 (N.C. Ct. App. 2018) ("An allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself, and is therefore insufficient to establish a claim for civil conspiracy." (cleaned up and citation omitted)), but also where directly related corporations have allegedly conspired with one another, see, e.g., Tate v. Sallie Mae, Inc., No. 3:10-CV-00386, 2011 WL 3651813, at *2-3 (W.D.N.C. Aug. 19, 2011) (holding a corporation and its wholly-owned subsidiaries cannot conspire with each other and dismissing the plaintiff's civil conspiracy claim under North Carolina law); Garlock v. Hilliard, No. 00-CVS-1018, 2000 WL 33914616, at *5-6 (N.C. Super. Ct. Aug. 22, 2000) (concluding the intracorporate immunity doctrine barred the plaintiffs' civil conspiracy claim based on an LLC allegedly conspiring with

---

[7] In their response in opposition, plaintiffs suggest defendants also conspired to discriminate against them based on race by intentionally siting the Vestal Farms operation "in a poor, rural, African-American community." (DE # 38, at 15-16; see also id. at 13.) However, plaintiffs did not allege this in their amended complaint.
[8] "[A]n exception to the doctrine exists if the corporate agent has an 'independent personal stake in achieving the corporation's illegal objective.'" State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 646 S.E.2d 790, 799 (N.C. Ct. App. 2007) (citation omitted), aff'd in part, rev'd in part, 666 S.E.2d 107 (N.C. 2008). Plaintiffs do not contend this exception applies.

11

its sole owner); BHB Enters., Inc v. Waste Mgmt of Carolinas, Inc., No. 08-CVS-9784 (N.C. Super. Ct. Mar. 25, 2009) (DE # 38-1) (declining to adopt "a *per se* holding that a parent company and its wholly owned subsidiary are incapable of conspiring with one another in the context of a civil conspiracy claim" but applying the doctrine to bar a civil conspiracy claim against a parent and its subsidiary where the plaintiff did not allege the subsidiary could not satisfy any judgment against it). Because plaintiffs have alleged defendants conspired only amongst themselves and not with any independent party, plaintiffs have failed to state a claim for civil conspiracy.

v. Unjust Enrichment

Plaintiffs' final claim against defendants is for unjust enrichment. Plaintiffs base this claim on defendants' purported failure to incur expenditures and costs associated with preventing and mitigating the contamination of plaintiffs' properties. (See Am. Compl., DE # 18, ¶ 350.) Plaintiffs' theory is defendants have used plaintiffs' properties for a *de facto* easement without compensating them. (Resp., DE # 38, at 17-18.) Defendants argue this claim fails because plaintiffs did not confer a benefit—direct or indirect—on defendants. (Mem., DE # 29, at 26.) The court agrees.

> To state a claim for unjust enrichment under North Carolina law, a plaintiff must allege that: (1) one party conferred a benefit upon the other party; (2) the benefit was not "conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances"; (3) the benefit was not gratuitous; (4) the benefit was measurable; and (5) the defendant consciously accepted the benefit. *JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C.App. 537, 750 S.E.2d 555, 559 (2013) (emphasis and citation omitted). Thus, the mere fact that one party was enriched at the expense of another, without more, does not amount to a claim of unjust enrichment. *Butler v. Butler*, 239 N.C.App. 1, 768 S.E.2d 332, 336 (2015) (citing *Watson Elec. Constr. Co. v. Summit Cos., LLC*, 160 N.C.App. 647, 587 S.E.2d 87, 92 (2003)). Instead, a benefit must have been conferred on the defendant "under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefit[ ] received." *Id.* at 336-37 (citation omitted).

12

Law Offices of John L. Juliano, P.C. v. Jensen, 673 F. App'x 291, 294 (4th Cir. 2016).

Although some courts permit recovery under a theory of "negative" unjust enrichment based on a polluter's disposal of waste on another's property thereby conferring a benefit on the polluter, see Little Hocking Water Ass'n v. E.I. du Pont Nemours and Co., 91 F. Supp. 3d 940, 985 (S.D. Ohio 2015) (collecting cases); cf. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 756 (8th Cir. 2006) ("[N]o Nebraska state court has recognized a negative unjust enrichment claim based on the pollution easement theory, which seeks disgorgement of profits unjustly saved by a polluter. Rather, Nebraska courts focus on how the pollution injures the plaintiff, and that claim is properly brought under the law of nuisance." (footnote and citations omitted)), plaintiffs have not cited any case which suggests North Carolina courts would adopt this rationale. Indeed, "[i]t would expand North Carolina public policy to find that plaintiffs conferred a benefit on defendants by" defendants saving costs by allegedly causing the invasion of contaminants onto plaintiffs' properties. Nix v. Chemours Co., 456 F. Supp. 3d 748, 764 (E.D.N.C. 2019) (dismissing an unjust enrichment claim based on the theory that the plaintiffs conferred a benefit on the defendant by allowing the defendants to discharge chemicals on the plaintiffs' property without incurring additional costs of containing and properly disposing of waste). Therefore, the court will dismiss plaintiffs' unjust enrichment claim.

    **B.    Motion to Strike**

Finally, defendants request that the court strike the allegations from plaintiffs' amended complaint pertaining to the following subjects: (1) "Chinese ownership, influence, and exploitation," (see Mem., DE # 31, at 4 (citing Am. Compl, DE # 18, ¶¶ 7, 234, 235)); (2) defendants' "expansive financial resources," (id. at 6 (citing Am. Compl, DE # 18, ¶¶ 6, 7, 34,

13

234, 258)); and (3) "character assassination," (id. at 7 (citing Am. Compl., DE # 18, ¶¶ 238, 265, 268, 269)).

As this court has stated in related litigation:

> Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." While the court has "considerable discretion in disposing of a Rule 12(f) motion to strike[,]" such motions are generally disfavored "because striking a portion of a pleading is a drastic remedy." *Godfredson v. JBC Legal Group, P.C.*, 387 F.Supp.2d 543, 547 (E.D.N.C. 2005) (internal quotations omitted). The moving party has the burden of proof on a motion to strike. *McMillian v. Leconey*, No. 5:09-CV-175-BR, 2010 WL 4791800, at *1 (E.D.N.C. Nov. 17, 2010). The court should only grant a motion to strike on the basis of irrelevancy when "it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material may prejudice the other party." *Simaan, Inc. v. BP Prods. N. Am., Inc.*, 395 F.Supp.2d 271, 278 (M.D.N.C. 2005).

In re NC Swine Farm Nuisance Litig., No. 5:15-CV-13-BR, 2015 WL 3948309, at *1 (E.D.N.C. June 29, 2015).

According to defendants, all of the subject allegations are "immaterial, impertinent, and scandalous." (Mem., DE # 31, at 9.) Plaintiffs argue these allegations are relevant and do not prejudice defendants. They also contend the court has previously considered these same allegations in related litigation and declined to strike them. (Resp., DE # 37, at 1.)

In that prior litigation, the court considered "allegations 'about the Communist Party, the People's Liberation Army, the Chinese government, Chinese corporations, exports of pork to China, Chinese demand for and purchases of pork, and statements and actions of non-party corporations distantly related to Murphy–Brown.'" In re NC Swine Farm Nuisance Litig., 2015 WL 3948309, at *3 (citation omitted). The court concluded it was appropriate to strike the allegations referring to the Communist Party and the like because they were inflammatory and highly prejudicial, with no bearing on the plaintiffs' underlying nuisance and negligence claims. Id. The court refused to strike the other allegations, concluding "it is not clear they have no

14

possible bearing upon the subject matter of the litigation[.]" Id. (internal quotation marks and citation omitted).

Here, plaintiffs do not reference communism or the Chinese government. They allege Smithfield was sold to a Chinese conglomerate for $7 billion, (Am. Compl., DE # 18, ¶¶ 7, 234), and as such, defendants have the financial resources to eliminate the factors resulting in the trespass to plaintiffs' properties, (id. ¶ 7). They also allege Smithfield exports much of its pork to China and it is cheaper to raise swine in North Carolina because of the less stringent environmental regulations. (Id. ¶ 235.) The court understands and appreciates defendants' argument "that the current socio-political climate in the era of COVID-19 warrants renewed and heightened caution against bigotry, racism, and xenophobia." (Mem., DE # 31, at 5 (footnote omitted).) However, the court emphasizes it is *not* considering whether any such evidence which might be offered in support these allegations would be admissible later in this case. The court is only considering whether these allegations should be stricken from the amended complaint. The court concludes these allegations may conceivably bear upon defendants' motivations, the extent of harm, and the ability to implement alternative technology, and therefore, the court will not strike them.

Next, defendants cite to plaintiffs' allegations regarding defendants' financial resources. Specifically, plaintiffs allege Murphy-Brown is a large enterprise, owning millions of hogs at thousands of sites across the United States, "with the ability and the resources to reduce and end the trespass onto Plaintiffs' properties." (Am. Compl., DE # 18, ¶ 6; see also id. ¶ 7 ("Defendants clearly have the resources to eliminate the factors, which result in a trespass onto Plaintiffs' properties.").) According to plaintiffs, "Smithfield is the largest hog and pork producer in the world, (id. ¶ 34), "own[ing] or operat[ing] more than 250 hog farms in North

15

Carolina, (id. ¶ 234). Together, plaintiffs allege, defendants are among "the richest companies in the world." (Id. ¶ 258.) The court did not consider similar allegations on the motion to strike in the related litigation. Cf. In re NC Swine Farm Nuisance Litig., 2015 WL 3948309, at *1 (noting the motion to strike from the complaint attached/embedded photographs, attached declarations, allegations related to China, and legal arguments concerning the Restatement (Second) of Torts). The court concludes these allegations concern defendants' ability to pay, which is relevant to punitive damages. See McKiver, 980 F.3d at 976 ("'[A] defendant's financial position is a proper consideration in assessing punitive damages.'" (citation omitted)). The court will not strike these allegations.

Finally, defendants claim certain of plaintiffs' allegations amount to "character assassination with prior 'bad acts' and guilt by association." (Mem., DE # 31, at 7.) The allegations to which defendants point concern prior environmental incidents, including one at Vestal Farms, for which one of the defendants (or its predecessor) was held responsible and conduct related thereto. (See id. at 7-8.) Conceivably these allegations go towards defendants' notice and knowledge. While the connection may be tenuous, again, the court emphasizes that at this stage, it is not ruling on the admissibility of evidence offered in support of any allegations.

In sum, the court concludes the challenged allegations have some relevancy and are not so impertinent or scandalous to warrant striking them.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims for civil conspiracy and unjust enrichment are

DISMISSED WITH PREJUDICE. Defendants' motion to strike is DENIED.

This 15 March 2021.

_____
W. Earl Britt
Senior U.S. District Judge