IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-85-D

| | |
|---|---|
| JEANNIE MAE BARDEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MURPHY-BROWN LLC, and ) | |
| SMITHFIELD FOODS, INC., ) | |
| ) | |
| Defendants. ) | |

On December 30, 2022, defendants Murphy-Brown LLC ("Murphy-Brown") and Smithfield Foods, Inc. ("Smithfield") (collectively, "defendants") moved for summary judgment against all plaintiffs [D.E. 83] and filed a memorandum [D.E. 84], statement of material facts [D.E. 85], and appendix of exhibits [D.E. 86] in support. On February 13, 2023, plaintiffs Jeannie Mae Barden ("Barden"), Montrina Boney ("Boney"), Janice Chasten ("Chasten"), Betty Jones Frazelle ("Frazelle"), Thelma Glasper ("Glasper"), Christine Highsmith ("Highsmith"), Alfreda Glasper Humphrey ("Humphrey"), Beverly Tomekia Jones ("Jones"), Gregory McCoy Jr. ("McCoy"), Adrena McCullen ("McCullen"), Nancy Newton ("Newton"), Leonard Pearsall ("L. Pearsall"), Louise Jones Pearsall ("L.J. Pearsall"), Norwood Pearsall ("N. Pearsall"), William Pearsall ("W. Pearsall"), Herndon Williams ("H. Williams") and Margaret Williams ("M. Williams") (collectively, "the Williams"), and Mavis Womble ("Womble") (collectively, "plaintiffs") responded in opposition [D.E. 88] and filed opposing statement of material facts [D.E. 89]. On March 20, 2023, defendants replied [D.E. 91] and filed a reply statement of material facts [D.E. 92]. As explained below, the court grants defendants' motion for summary judgment.

I.

Plaintiffs are residents of Kenansville and Magnolia, North Carolina, near the agricultural hog farming facilities at Vestal Farms. Defendant's Statement of Material Facts ("DSMF") [D.E. 85] ¶¶ 1, 14, 32, 49, 61, 76, 93, 108, 125, 143, 159, 172, 186, 204, 211, 231; Plaintiff's Reply Statement of Material Facts ("PSMF") [D.E. 89] ¶¶ 1, 14, 32, 49, 61, 76, 93, 108, 125, 143, 159, 172, 186, 204, 211, 231.[1] Vestal Farms, along with many of the surrounding hog farms, is operated by Circle K II, Inc., which has a contractual relationship with defendants. See DSMF ¶ 1; PSMF ¶ 1.[2] The parties disagree to the extent Circle K II, Inc.'s controls operations at Vestal Farms. See DSMF ¶¶ 274–76; PSMF ¶¶ 274–76.

N. Pearsall's allegations surround operation of defendants' hog trucks, "spray" or "mist" from the hog farm, flies from defendants' hog operations, and the offensive smell of the hog farm. See DSMF ¶ 17; PSMF ¶ 17. First, he claims that defendants' hog trucks carry "juice" and other waste that spills out onto the road and travels onto his property. See DSMF ¶¶ 18–20; PSMF ¶¶ 18–20. Second, he claims that a foul-smelling spray or mist emanates from the "hog fields" but is unaware if any physical particulates from the spraying settle on his property. See DSMF ¶ 21; PSMF ¶ 21. Third, he complains of flies, but he fails to identify the flies' origin and recognizes that flies generally are associated with animal farms. See DSMF ¶ 22; PSMF ¶ 22. Fourth, he claims there is an offensive smell, but he cannot identify the specific source of the foul smell. See DSMF ¶ 26; PSMF ¶ 26. He also acknowledges that he resides closer to other turkey and chicken farms than Vestal Farms. Id. K. Pearsal, who owns the property where N. Pearsall lives, claims that trucks pass

---

[1] Local Civil Rule 56.1(a)(2) permits a responding party to submit "additional paragraphs containing a statement of additional material facts as to which the opposing party contends there is a genuine dispute." Plaintiffs, however, instead submitted 188 paragraphs that are not in dispute in violation of the local rules. The court declines to consider these paragraphs.

[2] The parties dispute the degree of control defendants' have over the operation of Vestal Farms. See DSMF ¶ 1; PSMF ¶ 1. Defendants admit to owning the hogs housed at Vestal Farms. See DSMF ¶ 4.

2

by the property and spill waste or some other liquid on the road and grass. See DSMF ¶ 221; PSMF ¶ 221. K. Pearsal does not know who owns these trucks. See DSMF ¶ 223; PSMF ¶ 223.

The Williams allege that a foul odor and spray travel from Vestal Farms. See DSMF ¶ 34; PSMF ¶ 34. There is a factual dispute concerning whether the "spray" releases a foul scent over the Williams' house or whether the spray generally trespasses on the property. Compare DSMF ¶¶ 35–36 with PSMF ¶¶ 35–36. M. Williams claims that "little flying stuff" like "water" or "sewage" gets on the property when neighboring farms spray their crops. See DSMF ¶ 40; PSMF ¶ 40. M. Williams contends she washes her house every four to six months. See DSMF ¶ 43; PSMF ¶ 43. But the Williams failed to produce any physical evidence implicating Vestal Farms. See DSMF ¶¶ 43–44, 98–100; PSMF ¶¶ 43–44, 98–100.

Frazzle alleges foul smells, noise, and flies from Vestal Farms. See DSMF ¶ 51; PSMF ¶ 51. Frazzle claims that the loading and unloading of hogs increases the number of flies on her property. See DSMF ¶ 54; PSMF ¶ 54. Frazzle also states that "hog dust" once landed on her property many years ago. DSMF ¶ 57; PSMF ¶ 57. Frazzle does not define hog dust.

Womble alleges foul smells, spraying of "stuff" onto fields near her house, and flies from Vestal Farms. See DSMF ¶¶ 62–63; PSMF ¶¶ 62–63. She claims the "spray stuff" comes into her yard, adheres to her house, and forces her to wash her house, though it is unclear how often she washes her house. See DSMF ¶¶ 63–65; PSMF ¶¶ 63–65. Womble also admits that she had only one fly problem in 2019 and that she always has flies, regardless of any scent emitted by Vestal Farms. See DSMF ¶ 71; PSMF ¶ 71.

Humphrey complains about foul smells, dust, and trucks related to defendants' operation. See DSMF ¶¶ 80–86; PSMF ¶¶ 80–86. Humphrey believes that the dust likely comes from Vestal Farms, but she does not know the origin or contents of the dust. See DSMF ¶ 80; PSMF ¶ 80. Although Humphrey has seen the trucks leave "wetness" on the public road, she has not seen anything from defendants' trucks fly onto her property. See DSMF ¶¶ 81–86; PSMF ¶¶ 81–86.

3

McCullen alleges foul smells, dust, and hog waste droppings from defendants' trucks around her grandmother's house. See DSMF ¶¶ 108–11; PSMF ¶¶ 108–11. McCullen lives with her grandmother and son (neither of whom are plaintiffs) and has no ownership or other legal interest in the house. See DSMF ¶¶ 108–09; PSMF ¶¶ 108–09. McCullen claims the trucks around her grandmother's house expel dust that "linger[s] in the area in the air." See DSMF ¶ 116; PSMF ¶ 116. But McCullen failed to produce any physical evidence implicating defendants. See DSMF ¶ 117; PSMF ¶ 117.

W. Pearsall (who does not own, rent, or lease the property where he lives) alleges flies, foul smell, and water splashing from defendants' trucks onto the property where he resides. See DSMF ¶¶ 126, 131; PSMF ¶¶ 126, 131. W. Pearsall believes that defendants' trucks put waste on the front door of his house and car. See DSMF ¶ 136; PSMF ¶ 136. He also smells waste on his hands when he opens the door of his car. See DSMF ¶ 138; PSMF ¶ 138.

Barden alleges that drippings from defendants' trucks have trespassed on her property. See DSMF ¶ 148; PSMF ¶ 148. Barden has seen "specs" of liquid on her truck and states, "I know it don't be rain." DSMF ¶¶ 148, 150; PSMF ¶¶ 148, 150. Barden suspects that these "specs" are waste from defendants' truck and lagoon based on the foul smell. See DSMF ¶ 151; PSMF ¶ 151.

Newton alleges a smell and discharge from defendants' trucks, a smell from Vestal Farms, and flies. See DSMF ¶¶ 161–65; PSMF ¶¶ 161–65. Newton does not know whether the trucks she sees near her property belong to defendants, see DSMF ¶ 163; PSMF ¶ 163, or whether the odor and flies comes from Vestal Farms or other nearby chicken farms. See DSMF ¶¶ 163–64; PSMF ¶¶ 163–64.

McCoy (who does not own, rent, or lease the property where he lives) alleges that defendants' trucks "deposit[] particles" of dust where he lives and create a foul odor. See DSMF ¶ 189; PSMF ¶ 189. But McCoy also notes that nearby chicken and turkey farms and their trucks

4

also drop dirt on the property and emit foul odors. See DSMF ¶ 194; PSMF ¶ 194.[3] And McCoy lives 600-800 yards away from a turkey farm not owned by defendants. See DSMF ¶ 191; PSMF ¶ 191.

Boney (who does not own, lease, or rent the property where she lives) alleges that defendants' trucks drive by the property and drip waste and gravel either onto or that travel onto the property. See DSMF ¶¶ 231–33, 235; PSMF ¶¶ 231–33, 235. Boney also alleges that the smell from defendants' trucks attracts numerous flies. See DSMF ¶ 243; PSMF ¶ 243.

Highsmith discusses odors from defendants' operations. See DSMF ¶ 258; PSMF ¶ 258. Highsmith does not allege that anything from Vestal Farms landed on her property. See DSMF ¶ 260; PSMF ¶ 260.

On May 18, 2020, plaintiffs filed a complaint in this court alleging (1) trespass, (2) negligence, (3) civil conspiracy, (4) unfair and deceptive trade practices ("UDTPA"), and (5) unjust enrichment, and plaintiffs requested compensatory damages, punitive damages, and injunctive relief [D.E. 1]. On July 13, 2020, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 28]. On March 15, 2021, the court granted in part defendants' motion to dismiss, dismissing the civil conspiracy and unjust enrichment claims [D.E. 47]. On April 15, 2021, plaintiffs amended their complaint to assert a trespass claim and a negligence claim and to request compensatory and punitive damages. See Am. Comp. [D.E. 54]. On December 30, 2022, defendants moved for summary judgment on the remaining claims [D.E. 83].

---

[3] Several plaintiffs appear to allege only a foul odor but make no factual allegations themselves surrounding mist, dust, or any other particles intruding onto their property. DSMF ¶¶ 172–85, 204–10; PSMF ¶¶ 172–85, 204–10. Plaintiff clarifies that these plaintiffs "rely on the testimony of other witnesses to establish her claims." PSMF ¶ 208.

5

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict for the nonmoving party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (stating "[t]he nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

Defendants move for summary judgment on plaintiffs' trespass claims. Under North Carolina law, a trespass to real property claim requires: "(1) possession of the property by the

6

plaintiff at the time of the alleged trespass; (2) unauthorized entry by the defendant; and[] (3) damage to the plaintiff as a result." House v. Fed. Home Loan Mortg. Corp., 261 F. Supp. 3d 623, 635 (E.D.N.C. 2016), aff'd, 699 F. App'x 259 (4th Cir. 2017) (per curiam) (unpublished); Wagner v. City of Charlotte, 269 N.C. App. 656, 672, 840 S.E.2d 799, 809 (2020); Keyzer v. Amerlink, Ltd., 173 N.C. App. 284, 289, 618 S.E.2d 768, 772 (2005); see Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952). Because "every unauthorized entry on land in the peaceable possession of another constitutes a trespass, without regard to the degree of force used and irrespective of whether actual damage is done," a complaint "states a cause of action for the recovery of nominal damages for a properly pleaded trespass to [real property] even if it contains no allegations setting forth the character and amount of damages." Matthews, 235 N.C. at 283, 69 S.E.2d at 555; see Keziah v. Seaboard Air Line R.R., 272 N.C. 299, 311, 158 S.E.2d 539, 548 (1968); Hutton & Bourbonnais v. Cook, 173 N.C. 496, 499, 92 S.E. 355, 356 (1917); Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) (noting that trespass to real property does not require "actual damage as an essential element"), aff'd, 331 N.C. 743, 417 S.E.2d 447 (1992). "'[W]afted smoke, odors, dust, or ashes over the plaintiff's land' are not 'physical touching[s].'" Grant v. E.I. Du Pont De Nemours & Co., No. 4:91-CV-55, 1995 WL 18239435, at *4 (E.D.N.C. July 14, 1995) (unpublished) (citing Long v. City of Charlotte, 306 N.C. 187, 199, 293 S.E.2d 101, 109 (1982) abrogation on other grounds recognized in Kirby v. N.C. Dep't of Transp., 368 N.C. 847, 786 S.E.2d 919 (2016)). Showing that a substance crossed over land is not enough. Wall v. Trogdon, 249 N.C. 747, 754, 107 S.E.2d 757, 762 (1959); Grant, 1995 WL 18239435, at *4. A plaintiff must prove that a detectable amount of the substance "made an entry upon the lands or waters of the plaintiff, i.e., landed on plaintiffs' property rather than somewhere else." Wall, 249 N.C. at 754, 107 S.E.2d at 762; Grant, 1995 WL 18239435, at *4.

Defendants argue that plaintiffs have not presented evidence of "unauthorized entry," i.e., that anything physical from defendants's conduct came to rest on plaintiffs' property in detectable

7

quantities. See [D.E. 84] 13–20; [D.E. 91] 1–12. Defendants note that many plaintiffs failed to testify about any physical intrusion onto their property and that others premise their allegations solely upon "bare, conclusory beliefs and unsupported theories." [D.E. 84] 17. Defendants also argue that plaintiffs have failed to demonstrate that defendants caused any intrusion, noting an "absence of expert evidence (much less any evidence) linking the [Vestal Farms] 'facilities' (or trucks) to anything about which [p]laintiffs complain." Id. at 48.[4] Plaintiffs respond that they can "see and feel the trespasses" and that a genuine issue of material fact exists concerning whether detectible particles, not just odors, come onto plaintiffs' properties. [D.E. 88] 9. Plaintiffs contend that "they don't need an expert" because plaintiffs have observed "liquid or 'juice' coming out of [d]efendants' trucks off Highway 50" and "saw the muck rain down" from defendants' spraying operations. Id.

Some plaintiffs either admit that they have not found traces of particles from defendants on their property or testified that they do not know if particles from defendants have come to rest on their property. For example, Highsmith, Newton, Frazelle, and Chasten testified that while they saw hog waste fall from trucks onto public highways, no waste from these trucks actually entered into their property. See [D.E. 88-3] 8; [D.E. 88-4] 8; [D.E. 86-11] 11; [D.E. 88-13] 31–32; see also DSMF ¶¶ 172–85, 204–10; PSMF ¶¶ 172–85, 204–10.[5] Newton testified that she saw a substance from trucks hitting only the road. See, e.g., [D.E. 86-11] 11 ("I just see [a substance] coming out and landing on the road. I can't tell you where it's going."). N. Pearsall, Humphrey, and McCoy, appear to assume, without any evidence, that the substances from the road eventually migrate to their property. See [D.E. 86-2] 12–13 (stating "I just know that the wind take it everywhere and wherever."); [D.E. 86-6] 19 (noting that the "wetness" she has witnessed has been on her mailbox,

---

[4] Defendants make similar causation arguments regarding plaintiffs' negligence claims. See [D.E. 84] 41; [D.E. 91] 13–14.

[5] Frazelle testified that she believes hog waste touched her mailbox. Frazelle clarified, however, that her mailbox is not on her property. It is located across the highway. See [D.E. 88-4] 9.

8

which is located off-property across the street); [D.E. 88-11] 6–7 (noting that the waste likely gets on the property because it "ain't exactly got to go a long ways" from the highway). Even viewing the record in the light most favorable to plaintiffs Highsmith, Newton, Frazelle, Chasten, N. Pearsall, Humphrey, and McCoy, plaintiffs have failed to produce any evidence that any detectable quantity of a physical substance came to rest on their property. Therefore, their trespass claims fail.

Some plaintiffs testified that there is a detectable substance on their property. Specifically, McCullen testified that dust from defendants' trucks "goes on to the house." [D.E. 86-8] 17. McCullen also testified that pig waste from defendants' trucks allegedly once hit her in the face. See [D.E. 86-8] 17. McCullen, however, cannot recall the year or month in which pig waste allegedly hit her in the face, and it is not clear that this one incident falls within the statute of limitations period. See [D.E. 86-8] 17–18. Womble testified to finding "greasy" material on her property and assumes that it comes from the spraying activity at the hog farm. See [D.E. 86-5] 26–27. H. Williams reported feeling a "dampness" from the sprayers, [D.E. 93-7] 15, and testified that something created some kind of "film" on the outside of his house. See [D.E. 88-15] 6. Barden and W. Pearsall testified that they have found "sprinkles" and "spots" on their vehicles that appeared at some point in time after trucks drove by the property. See DSMF ¶¶ 136–37, 148–52; PSMF ¶¶ 136–37, 148–52.

Plaintiffs in this action fail to produce evidence sufficient to create a genuine issue of material fact that the defendants caused these substances to enter plaintiffs' respective properties. First, plaintiffs fail to produce evidence concerning what the alleged particles on their property actually are. Several plaintiffs suggest that defendants' trucks cause an unidentified "dust" to come onto the property. See, e.g., [D.E. 86-8] 22; [D.E. 88-4] 8; [D.E. 88-11] 11; [D.E. 88-15] 5. Although plaintiffs speculate that some kind of hog material is mixed in this dust, plaintiffs fail to identify what the hog material is. Moreover, plaintiffs offer no evidence that this dust comes specifically from defendants' trucks and not other sources, such as the road, neighboring fields,

9

trucks not belonging to the defendant,[6] or the myriad of sources of dust in rural North Carolina. See, e.g., [D.E. 88-4] 8 (calling the substance a "hog dust ash"); [D.E. 88-11] 11 (claiming that dust blows on the property but claiming, without evidence that "I'm sure some of that animal feces and stuff blowed in there is getting on there too"); [D.E. 88-15] 5 (claiming, without evidence, that there is "hog stuff" in the dust); [D.E. 86-8] 21–22 (speculating, without evidence, that this dust is some form of hog chemical). Other plaintiffs admitted that other cars, trucks, and even the wind itself often blow dust and gravel onto their properties. See, e.g., [D.E. 88-2] 6.

The plaintiffs alleging trespass from farm spraying also have failed to identify the substances they claim are trespassing on their property. Plaintiffs appear to argue that the presence of more flies than usual on their property signals that there is hog waste on their property. See [D.E. 88] 27 n. 2.[7] These plaintiffs identify some form of "grease," "film," or even "dampness" produced by Vestal Farms' spray. See, e.g., [D.E. 86-5] 26–27; [D.E. 93-7] 15; [D.E. 88-15] 6; [D.E. 86-5] 26. However, this evidence is mere speculation. For example, Womble appears to believe that the spraying caused grease to enter her property because of a general "hog scent" that is "in the air." [D.E. 86-5] 11. Additionally, some plaintiffs admit to not knowing what farm is actually spraying around their houses. See, e.g., [D.E. 88-13] 17–18.

Even viewing the record in the light most favorable to plaintiffs, plaintiffs failed to produce evidence sufficient to create a genuine issue of material fact tying the substances on their property to defendants' trucks or Vestal Farms. Therefore, plaintiffs cannot prove that defendants caused the trespass to occur. See House, 261 F. Supp. 3d at 635; Matthews, 235 N.C. at 283, 69 S.E.2d at 555; Keyzer, 173 N.C. App. at 289, 618 S.E.2d at 772. In opposition to this conclusion, plaintiffs argue

---

[6] McCoy testified that trucks from turkey farms not owned by defendants often drop waste and other substances on the roads near his property. See DSMF ¶ 194; PSMF ¶ 194.

[7] Plaintiffs clarify that they cite flies on their property only as evidence of trespass, not that the flies themselves constitute a trespass. See [D.E. 88] 27 n.2.

10

that the amended complaint alleges that defendants are trespassing with substances being emitted from 18 affiliated farms in the area and not just Vestal Farms and its trucks. See PSMF ¶ 7 (citing language in the amended complaint referencing "facilities, plural."). Thus, plaintiffs suggest that the amount of facilities affiliated with defendants surrounding the plaintiffs makes it impossible that any other source could have been responsible for the alleged trespasses. See [D.E. 88] 12 (labeling the map showing the location of the other facilities as "Hog Heaven").

The amended complaint does not identify these other allegedly affiliated facilities, let alone allege who owns them and what their spraying practices are. See Am. Compl. [D.E. 54]. Moreover, the amended complaint alleges that Vestal Farms, not the 18 farms mentioned in the plaintiffs' memorandum in opposition, is the source of the hog material. See, e.g., id. at ¶ 8 ("Defendant Murphy-Brown still uses the outmoded "lagoon and sprayfield" system at Vestal."); ¶ 11 ("Often [p]laintiffs must clean manure off their cars and house windows because of the liquid manure spray that drifts in the wind. This manure is a direct result of [d]efendants failing to monitor and control operations at Vestal."); ¶ 232 ("Moreover, if the wind is blowing her car will just get dirty again from the fecal mist that blows into her property from Vestal."); ¶ 323 ("Defendants were negligent in allowing hog manure, urine, dust, skin cells, dander, particulates, dried fecal matter, feed particles, and urine to discharge, escape, or to be released from Vestal, and to travel to the properties owned or occupied by [p]laintiffs."). Although plaintiffs do use the plural "facilities" in the amended complaint, context confirms that the amended complaint references the multiple facilities present at Vestal Farms and not the other 18 farms in the area. See id. at ¶ 324 ("Defendants had a duty of reasonable care as to the ownership, maintenance, and control of the hogs that it recurrently sent in groups to the Vestal swine facilities.") (emphasis added); see also id. at ¶ 2 (explaining that Vestal Farms maintains two different facilities, Vestal Farm #1 and Vestal Farm #2). Accordingly, the amended complaint alleges that the only source of spray comes from Vestal Farms. Plaintiffs cannot use summary judgment briefing to add 18 more farms in an attempt to indirectly support their

11

causation arguments. See, e.g., United States ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210 n.6 (4th Cir. 2017); Murray Energy Corp. v. Admin. Env't Prot. Agency, 861 F.3d 529, 537 n.5 (4th Cir. 2017); vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017); S. Walk Broadlands Homeowner's Ass'n, Inc. v. OpenBand Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); Barclay White Skanska, Inc. v. Battelle Mem. Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (unpublished); see also Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009); Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009); Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7, 2019 WL 5446712, at *5 n.4 (E.D.N.C. Oct. 23, 2019) (unpublished); Optima Tobacco Corp. v. Flue-Cured Tobacco Growers, Inc., No. 5:16-CV-889, 2019 WL 4858848, at *8 (E.D.N.C. Sept. 30, 2019) (unpublished); United States for Graybar Elec. Co., Inc. v. TEAM Constr., LLC, 275 F. Supp. 3d 737, 748 n.3 (E.D.N.C. 2017); Gilbert v. Deutsche Bank Tr. Co. Ams., No. 4:09-CV-181, 2017 WL 1012981, at *2 n.2 (E.D.N.C. Mar. 14, 2017) (unpublished); Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) (unpublished).

Alternatively, even if plaintiffs' amended complaint alleged a source of contamination other than Vestal Farms, evidence "establish[ing] only that contaminants 'could travel' to the plaintiff's property, not that the contaminants 'actually traveled' to the plaintiff's property, is not sufficient to withstand a motion for summary judgment on the issue of causation." Ellington v. Hester, 127 N.C. App. 172, 176, 487 S.E.2d 843, 845 (1997) (discussing causation in a negligence case). The record lacks evidence directly linking the substances allegedly trespassing on plaintiffs' land with defendants' operations. For example, plaintiffs failed to gather, collect, or test any of the dust, film, or grime allegedly left on plaintiffs' property to determine its composition or if it is attributable to defendants. Plaintiffs in other cases have demonstrated that scientific testing can detect the presence of swine fecal waste. For example, in McKiver, plaintiffs offered expert testimony demonstrating

12

that hog waste chemicals sprayed by the defendants in that case did reach the plainitiffs' property. McKiver v. Murphy-Brown, LLC, 980 F.3d 937, 960 (4th Cir. 2020). Plaintiffs' expert used "a DNA indicator called Pig2bac to show the presence of fecal material as a proxy for odor leaving the farm." Id. (quotation omitted). Plaintiffs in McKiver used this method to track the fecal waste and identify its presence on plaintiffs' property. See id.

Here, plaintiffs ran no such tests and offered no such expert testimony. Although plaintiffs could have, for example, taken samples from the lagoon or the spray material emitted from Vestal Farms and compared it to samples from the grime and film on plaintiffs' property, plaintiffs failed to do so. Plaintiffs also did not compare dust or liquid from defendants' trucks to dust or splatter found on plaintiffs' property. Instead, plaintiffs rely solely on speculation and conclusory allegations to support their claims that defendants caused these substances to enter their properties.

Plaintiffs respond that they do not need expert testimony because they can "see the liquid, the 'juice,' the mist, the spray come onto their properties." [D.E. 88] 25. Although plaintiffs may not need expert testimony to establish that something is on their property, the lay testimony they have offered in opposition to summary judgment has failed to demonstrate what the substance is and the source of the substance. See [D.E. 91] 8–11.

Finally, plaintiffs respond to defendants' causation argument by claiming that multiple potential sources of trespass simply point to a potential "joint tortfeasor" not named in the amended complaint. [D.E. 88] 9. However, even if there are multiple tortfeasors, plaintiffs still must produce sufficient evidence that the defendants named in the amended complaint actually caused a trespass to occur. See [D.E. 91] 11–12.

Ultimately, even viewing the record in the light most favorable to plaintiffs, they have failed to provide sufficient evidence to create a genuine issue of material fact regarding their trespass claims. Some plaintiffs failed to provide evidence that anything actually touched their property and others failed to produce evidence that they saw defendants caused "dust" or other materials to enter

13

their property. Several plaintiffs also failed to identify what exactly is the "stuff" they claim entered their property. Moreover, all plaintiffs failed to produce sufficient evidence that defendants caused the alleged trespasses. Plaintiffs' testimony supporting their claims is speculative and lacks the most basic details. Thus, the court grants defendants' motion for summary judgment on the trespass claims.

B.

Defendants seek summary judgment on plaintiffs' negligence claims. Under North Carolina law, "[n]egligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968); Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cnty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008). To prove negligence, a plaintiff must prove that "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E.2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013); Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010).

Plaintiffs rely on the same underlying conduct for both the negligence and the trespass claim. See Am. Compl. at ¶ 323 ("Defendants were negligent in allowing hog manure, urine, dust, skin cells, dander, particulates, dried fecal matter, feed particles, and urine to discharge, escape, or to be released from Vestal, and to travel to the properties owned or occupied by Plaintiffs"). As with the trespass claims, plaintiffs have failed to produce evidence sufficient to create a genuine issue of material fact that defendants were the proximate cause of plaintiffs' injury. Even viewing the record in the light most favorable to plaintiffs, plaintiffs have failed to present any non-speculative or non-

14

conclusory evidence establishing what substances are allegedly injuring them and who or what caused them to be on plaintiffs' property. See Ward, 368 N.C. at 37, 770 S.E.2d at 72; Bridges, 366 N.C. at 541, 742 S.E.2d at 796; Fussell, 364 N.C. at 226, 695 S.E.2d at 440; Whisnant, 204 N.C. App. at 93–94, 693 S.E.2d at 156. Thus, the court grants defendants' motion for summary judgment on plaintiffs' negligence claims.[8] In light of this conclusion, the court also grants summary judgment to defendants on punitive damages. See N.C. Gen. Stat. §1D-15. Finally, the court does not address the parties' arguments about the Right to Farm Act.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 83]. Defendants may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 16 day of August, 2023.

JAMES C. DEVER III
United States District Judge

---

[8] To the extent plaintiffs attempt to use their briefing in opposition to summary judgment to recast their negligence claims into negligence per se claims, the court declines to permit plaintiffs to do so. See, e.g., United States ex rel. Carter, 866 F.3d at 210 n.6; Murray Energy Corp., 861 F.3d at 537 n.5; vonRosenberg, 849 F.3d at 167 n.1; S. Walk Broadlands Homeowner's Ass'n, Inc., 713 F.3d at 184.

15